1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9        **EASTERN DISTRICT OF CALIFORNIA**
10
11   JOE HAND PROMOTIONS, INC.,           )   Case No.: 1:12-cv-00672 - LJO - JLT
                                         )
12            Plaintiff,                  )   FINDINGS AND RECOMMENDATIONS
                                         )   GRANTING IN PART PLAINTIFF'S MOTION
13       v.                               )   FOR DEFAULT JUDGMENT
                                         )
14   KLARKE ANTHONY GARL, et al.          )   (Doc. 13)
                                         )
15            Defendants.                 )
                                         )
16   _____ )

17        Plaintiff Joe Hand Promotions, Inc., seeks the entry of default judgment against defendant

18   Klarke Anthony Garl, individually and doing business as Nile Bar and Grill.  (Doc. 13).  The Court

19   took the matter under submission on June 21, 2013.  (Doc. 16).  For the following reasons, the Court

20   recommends the motion for default judgment be **GRANTED IN PART**.

21   **I.      Background and Procedural History**

22        Plaintiff asserts it possessed the exclusive rights to the nationwide commercial distribution of

23   "Ultimate Fighting Championship 129: Georges St-Pierre v. Jake Shields" ("the Program"), televised

24   on April 30, 2011.  (Doc. 1 at 4).  Plaintiff alleges Defendant intercepted and broadcast the Program

25   without obtaining permission from Plaintiff.  *Id.* at 3.  Accordingly, Plaintiff filed its complaint against

26   Defendant on April 27, 2012, alleging violations of 47 U.S.C. § 605, *et seq.*; 47 U.S.C. § 533, *et seq.*;

27   and the California Business and Professions Code § 17200, *et seq.*  Also, Plaintiff alleges Defendant is

28   liable for wrongful conversion of property, arising under California State law.  *Id.* at 4-9.

Defendant was properly served with the First Amended Complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure.  Upon application of Plaintiff, default was entered against Defendant pursuant to Fed. R. Civ. P. 55(a) for the failure to answer on September 18, 202.  (Docs. 7-8).  On May 15, 2013, Plaintiff filed the motion now pending before the Court seeking default judgment against Defendant.  (Doc. 13).

## II.    Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment.  When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for default judgment.  Fed. R.Civ. P. 55(a)-(b).  Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven.  *Pope v. United States*, 323 U.S. 1, 12 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).  In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting a motion for default judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Entry of default "does not automatically entitle the plaintiff to a court-ordered judgment.  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default judgment is disfavored.  *Id.* at 1472.

## III.    Plaintiff's Factual Allegations

The factual assertions of Plaintiff are taken as true because default has been entered against Defendant.  *See Pope*, 323 U.S. at 22.  As noted above, Plaintiff alleges that by contract, it was granted

exclusive domestic commercial distribution rights to the Program.  Pursuant to that contract, Plaintiff entered into sublicensing agreements with commercial entities throughout North America to broadcast the Program.  (Doc. 1 at 4).  According to Joe Hand, Jr., President of J & J Sports Productions, Inc., the company endeavors "to police [its] signals for the purpose of identifying and prosecuting establishments which pirate [the] programming," and "retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates."  (Doc. 18 at 2, Hand Decl. ¶¶ 5-6).

Plaintiff asserts Defendant is "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Nile Bar and Grill."  (Doc. 1 at 3).  Plaintiff alleges Defendant engaged in an act of signal piracy by broadcasting the Program without purchasing a proper sublicense.  *Id.* at 3.  For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code.  *Id.* at 4-8.  In the application for default judgment, Plaintiff requested damages for the violation of 47 U.S.C. § 605 and conversion.  (*See* Doc. 13-1).  Therefore, the Court addresses only these claims.

## IV.   Application of the *Eitel* Factors

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

### A.   Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment.  *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177.  In general, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages.  *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).  Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

### B.   Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together.  *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012).  The Ninth Circuit has suggested that, when

1   combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover."

2   *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

3       1.    Claim arising under 47 U.S.C. § 605

4       The Federal Communications Act of 1934 ("Communications Act") "prohibits the unauthorized

5   receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled

6   thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)).  The

7   Ninth Circuit has determined "'communications' protected by § 605(a) include satellite television

8   signals." *Id.*

9       In pertinent part, the Communications Act provides, "No person not being authorized by the

10  sender shall intercept any radio communication and divulge or publish the … contents … of such

11  intercepted communication to any person." 47 U.S.C. § 605(a).  Thus, Plaintiff must establish it was the

12  party aggrieved by Defendant's actions.  47 U.S.C. § 605(e)(3)(A).  In addition, Plaintiff must show

13  Defendant intercepted a wire or radio program and published it without permission. 47 U.S.C. § 605(a).

14      *a.*    *Party aggrieved*

15      Under the Communications Act, a "person aggrieved" includes a party "with proprietary rights

16  in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite

17  cable programming."  47 U.S.C. § 605(d)(6).  In the Complaint, Plaintiff asserted it was granted the

18  exclusive, nationwide commercial distribution rights to the Program.  (Doc. 1 at 4).  Accordingly,

19  Plaintiff was a party aggrieved within the meaning of § 605.

20      *b.*    *Interception and publication of the Program*

21      Plaintiff acknowledges it "cannot determine the precise means that the Defendants used to

22  receive the Program."  (Doc. 13-1 at 8). Similarly, in *Joe Hand Prod. v. Behari*, 2013 U.S. Dist. LEXIS

23  37277 (E.D. Cal. Mar. 18, 2013), the plaintiff was unable to identify the nature of the transmission.

24  This Court observed: "Plaintiff's inability to allege the precise nature of the intercepted transmission in

25  this case …raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's

26  claim under that provision."  *Id.*, 2013 U.S. Dist. LEXIS 37277, at *7.  Nevertheless, Plaintiff provided

27  evidence that Defendant broadcast the Program in his establishment, because the investigator witnessed

28  the Program broadcast at Nile Bar and Grill.  (Doc. 13-3 at 2).

Because Plaintiff was a party aggrieved, and Defendant intercepted the Program and published it without permission, Plaintiff has established the elements of a claim under the Communications Act:

### 2.   Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Previously, this Court determined the possession of "a right to distribute programming" constitutes ownership of properly for purposes of conversion. *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (citing *Don King Prods./ Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to possess the ownership of, or right to license, the broadcasting of the Program.

Given that Plaintiff established it held the distribution rights, the company held a "right to possession of property." Further, Plaintiff alleged facts sufficient to support a finding that Defendant engaged in signal piracy by broadcasting the Program without a sublicense. The investigator estimated the establishment had a capacity of "approximately 200 people." (Doc. 13-3 at 3). The rate sheet indicates a sublicense cost $1,600.00 for an establishment with the capacity of 201 persons. (Doc. 18, Exh. 1). Consequently, Plaintiff has established damages, and states a claim for conversion against Defendant.

### C.   Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff seeks compensatory damages for Defendant's tortious conversion of Plaintiff's property. (Doc. 13-1 at 20). Also, Plaintiff requests statutory damages totaling $110,000 for the violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. *Id.* at 8. Plaintiff asserts Defendant should pay the statutory maximum

because nominal damages have proven insufficient to combat piracy. *Id.* at 19-20. Thus, Plaintiff appears to concede that amount of damages requested is not proportional to Defendant's conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F. Supp. 2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Montes*, 2013 U.S. Dist. LEXIS 9282, at * 5 (N.D. Cal. Jan. 22, 2013) ("the large amount of money that Plaintiff is requesting—maximum statutory damages—weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged"); *Moore v. Cisneros*, 2012 U.S. Dist. LEXIS 177044, at *5 (E.D. Cal. Dec. 12, 2023) ("[d]efault judgment is disfavored when a large sum of money is involved"); *but see G & G Closed Events, LLC v. Shahen*, 2012 U.S. Dist. LEXIS 58723, at *18 (E.D. Cal. Apr. 26, 2012) ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment). However, as discussed below, the Court declines to enter judgment in the amount requested. Therefore, the factor does not weigh against Plaintiff's request for default judgment.

### D.      Possibility of dispute concerning material facts

The Court considers also the possibility of dispute as to any material facts in the case. Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendant failed to defend the case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E.      Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. In this case, Defendant was served with the Summons and Complaint, as well as the motion for default judgment. (*See* Doc. 13-1 at 23). Given these facts, it is unlikely that Defendant's actions were the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect

because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). Accordingly, this factor does not weigh against default judgment.

### F.    Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendant's failure to appear before the Court and defend in this action makes a decision on the merits impractical.

## V.    Damages

Having accepted the well-pleaded allegations as true, Plaintiff established the elements of a violation of the Communications Act and the tort of conversion. Therefore, Plaintiff is entitled to damages based upon Defendant's act of signal piracy. Plaintiff argues that "it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions." (Doc. 13-1 at 9).

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When the Court determines a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. *Id.* at § 605(e)(3)(C)(ii). The Court has "wide discretion" to determine the proper amount of damages to be awarded. *DirecTV Inc. v. Le*, 267 F. App'x 636 (9th Cir. 2008) (citation omitted).

The Court may consider a number of factors in its determination of the amount of damages, including any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951, at * 10-11 (E.D. Cal. Sept. 6, 2011) (citing *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Adam Kim, Plaintiff's investigator, noted he did not have to pay a cover charge to enter Nile Bar and Grill. (Doc. 13-3 at 2). Mr. Tate noted the Program was displayed on two televisions and two projectors, with one projector by the bar counter, the two televisions by the bar, and the other projector by a stage. *Id.* According to Mr. Kim, the establishment had a capacity of "approximately 200 people," and he counted 75-80 people while at the location. *Id.* at 3. Given these factors, the Court finds an award of $8,000, which is five times the cost of a proper sublicense, is appropriate.[1]

Although Plaintiff asserts a right to enhanced damages, allegations regarding the amount of damages must be well-plead and supported by factual allegations. *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at 560. "The mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." *Sorondo*, 2011 U.S. Dist. LEXIS 99951, at *10 (quoting *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)). Here, Plaintiff alleged: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by the Defendant was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." (Doc. 1 at 5). Importantly, there are no factual allegations in the complaint to support the conclusion that Defendant's actions were for the purpose of financial gain.[2] Previously, the Court explained:

> To adequately state a claim against a defendant, a plaintiff must set forth the legal and factual basis for his or her claim. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678. A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-56 (internal quotation marks and citations omitted). In its complaint, Plaintiff simply alleged a legal conclusion: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition

---

[1] Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors. *See, e.g.*, *Joe Hand Promotions v. Brown*, 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $4,000 in damages where the program was broadcast on six 60-inch televisions, and there was no premium for food or drink)." *J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 in statutory damages, an amount two times the cost of a sublicense).

[2] In light of the fact the fight was displayed on four TVs in the bar, the Court accepts the piracy was willful.

8

by each of the Defendant [sic] was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."

*Joe Hand Promotions, Inc. v. Hathcock*, 2012 U.S. Dist. LEXIS 101208, at *2-3 (E.D Cal. July 20, 2012). Consequently, the Court found Plaintiff "failed to allege facts establishing the grounds of entitlement to enhanced damages." *Id.* at *3.

Though the evidence submitted demonstrates that some of the patrons were watching the fight closely enough that they cheered at its conclusion, the affidavit fails to explain just how many people this was. There is no indication food or drink prices were increased because of the fight and the affiant admits there was no cover charge and fails to indicate there was any advertising related to the fight. Finally, there is no indication the number of people in the bar was unusual or can be attributed to the display of the fight. Thus, there is insufficient evidence to demonstrate the piracy was done for purposes of commercial or private gain and, therefore, insufficient basis upon which the Court may rely to award enhanced damages. Significantly, the complaint in *Hathcock* contained the same language as the complaint now before the Court, and suffers the same infirmities, and enhanced damages are not recommended.

Finally, because Plaintiff chose to receive statutory damages rather than actual damages under the Communications Act, damages for conversion are subsumed into the total award of $8,000. *See J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award additional damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (E.D. Cal. May 7, 2010) (declining conversion damages because statutory damages "sufficiently compensate[d]" the plaintiff).

## VI.     Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. However, the damages requested are disproportionate to Defendant's actions. Importantly, when determining the amount of damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102

F.Supp.2d at 1198.  Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.*  Accordingly, the Court recommends the award of $8,000 for Defendant's wrongful acts.  This amount both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy.  *See Lake Alice Bar*, 168 F.3d at 350 (observing that a lower statutory award may deter while not destroying a business).

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1.     Plaintiff's application for default judgment (Doc. 32) be **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:

    A.     Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $8,000;

    B.     Plaintiff's request for enhanced damages be **DENIED**;

    C.     Plaintiff's request for damages for the tort of conversion be **DENIED**;

2.     Judgment be entered in favor of Plaintiff Joe Hand Promotions, Inc. and against Defendant Klarke Anthony Garl; and

3.     Plaintiff be directed to file any application for attorney's fees pursuant to 47 U.S.C. § 605 no later than fourteen days from the entry of judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __July 8, 2013__                    _____/s/ **Jennifer L. Thurston**
                                             UNITED STATES MAGISTRATE JUDGE

10